JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
JEROME JUSTIN SPENCER

## DEFENDANTS
BLOOMINGDALE'S
-and
MACY'S, INC.

**(b)** County of Residence of First Listed Plaintiff   Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Montgomery
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jeffrey Campolongo, Esquire, Law Office of Jeffrey Campolongo
50 Monument Rd, Ste 101, Bala Cynwyd PA 19004
484-434-8930

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

❏ 1  U.S. Government Plaintiff

☒ 3  Federal Question
      *(U.S. Government Not a Party)*

❏ 2  U.S. Government Defendant

❏ 4  Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - Product Liability | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | ❏ 367 Health Care/ Pharmaceutical | | | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 330 Federal Employers' Liability | ❏ 368 Asbestos Personal Injury Product Liability | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | ❏ 340 Marine | | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❏ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ❏ 835 Patent - Abbreviated New Drug Application | ❏ 460 Deportation |
| | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | | ❏ 840 Trademark | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 355 Motor Vehicle Product Liability | ❏ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
| ❏ 160 Stockholders' Suits | ❏ 360 Other Personal Injury | ❏ 380 Other Personal Property Damage | ❏ 710 Fair Labor Standards Act | ❏ 861 HIA (1395ff) | ❏ 490 Cable/Sat TV |
| ❏ 190 Other Contract | | ❏ 385 Property Damage Product Liability | ❏ 720 Labor/Management Relations | ❏ 862 Black Lung (923) | ❏ 850 Securities/Commodities/ Exchange |
| ❏ 195 Contract Product Liability | ❏ 362 Personal Injury - Medical Malpractice | | ❏ 740 Railway Labor Act | ❏ 863 DIWC/DIWW (405(g)) | ❏ 890 Other Statutory Actions |
| ❏ 196 Franchise | | | ❏ 751 Family and Medical Leave Act | ❏ 864 SSID Title XVI | ❏ 891 Agricultural Acts |
| | | | | ❏ 865 RSI (405(g)) | ❏ 893 Environmental Matters |
| | | | | | ❏ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | |
| ❏ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ❏ 791 Employee Retirement Income Security Act | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | ❏ 896 Arbitration |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | | ❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate Sentence | | ❏ 871 IRS—Third Party 26 USC 7609 | |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations | ❏ 530 General | | | ❏ 950 Constitutionality of State Statutes |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities - Employment | ❏ 535 Death Penalty | **IMMIGRATION** | | |
| ❏ 290 All Other Real Property | ❏ 446 Amer. w/Disabilities - Other | **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 448 Education | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration Actions | | |
| | | ❏ 550 Civil Rights | | | |
| | | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
❏ 2 Removed from State Court
❏ 3 Remanded from Appellate Court
❏ 4 Reinstated or Reopened
❏ 5 Transferred from Another District *(specify)*
❏ 6 Multidistrict Litigation - Transfer
❏ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1981, 42 U.S.C. § 1982, and 42 U.S.C. § 1985

Brief description of cause:
Civil rights

## VII. REQUESTED IN COMPLAINT:
❏ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
>$150,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☒ Yes  ❏ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
8/22/17

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.  (See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

**III.** **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.** **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

**APPENDIX I**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| JEROME JUSTIN SPENCER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BLOOMINGDALE'S | : | NO. |
|   -and- | : | |
| MACY'S, INC. | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a)  Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.      ( )

(b)  Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits      ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.      ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)      ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    ( **X** )

| | | |
|---|---|---|
| **August 16, 2017** | **JEFFREY CAMPOLONGO** | |
| **Date** | **Attorney-at-law** | **Attorney for Plaintiff** |
| | | |
| **484-434-8930** | **484-434-8931** | **jcamp@jcamplaw.com** |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff: **201 Chain Street, Norristown, PA 19401**

Address of Defendant: **Bloomingdale's, King Of Prussia (The Court), 2 Route 202 North, 660 West Dekalb Pike, The Court Of King Of Prussia, King Of Prussia, PA 19406**

Address of Defendant: **Macy's, Inc., 151 West 34th Street, New York, Ny 10001**

Place of Accident, Incident or Transaction: **King Of Prussia, PA**

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))　　　　　　Yes ☐　　No **X**

Does this case involve multidistrict litigation possibilities?　　　　　　Yes ☐　　No **X**

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?

　　　　　　Yes ☐　　No **X**

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?　　　　　　Yes ☐　　No **X**

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?　　　　　　Yes ☐　　No **X**

CIVIL: (Place ＿ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. **X** All other Federal Question Cases
    (Please specify) **42 U.S.C. § 1981, 42 U.S.C. § 1982, and 42 U.S.C. § 1985**

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify)

## ARBITRATION CERTIFICATION

*(Check appropriate Category)*

I, **Jeffrey Campolongo**, counsel of record do hereby certify:

**X** Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

**X** Relief other than monetary damages is sought.

DATE: **August 16, 2017**　　　　　　　　　　　　　　　　　　　　　　**82608**

　　　　　　　　　　　　　　Attorney-at-Law　　　　　　　　　　　　　Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: **August 16, 2017**　　　　　　　　　　　　　　　　　　　　　　**82608**

　　　　　　　　　　　　　　Attorney-at-Law　　　　　　　　　　　　　Attorney I.D.#

CIV. 609 (4/03)

LAW OFFICE OF JEFFREY CAMPOLONGO        COUNSEL FOR PLAINTIFF
BY: JEFFREY CAMPOLONGO, ESQUIRE
IDENTIFICATION NO: 82608
50 MONUMENT ROAD, SUITE 101
BALA CYNWYD, PA 19004
484.434.8930
484.434.8931 FAX
JCAMP@JCAMPLAW.COM
WWW.JCAMPLAW.COM

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEROME JUSTIN SPENCER : <br> 201 CHAIN STREET : <br> NORRISTOWN, PA 19401 : <br> : <br>          PLAINTIFF, : <br> : <br>      v. : <br> : <br> BLOOMINGDALE'S : <br> KING OF PRUSSIA (THE COURT) : <br> 2 ROUTE 202 NORTH : <br> 660 WEST DEKALB PIKE : <br> THE COURT OF KING OF PRUSSIA : <br> KING OF PRUSSIA, PA 19406 : <br> : <br>    - AND - : <br> : <br> MACY'S, INC. : <br> 151 WEST 34TH STREET : <br> NEW YORK, NY 10001 : <br> : <br>         DEFENDANTS. : | CIVIL ACTION <br><br> NO.: <br><br> <u>JURY TRIAL DEMAND</u> |

### COMPLAINT

## I.    INTRODUCTION

Plaintiff, Jerome Justin Spencer, is an adult individual who alleges through his counsel, the **LAW OFFICE OF JEFFREY CAMPOLONGO**, that he has been deprived of his statutory and constitutional rights as a result of the Defendants' practices of racial profiling and discrimination, in violation of under 42 U.S.C. § 1981, 42 U.S.C. § 1982, and 42 U.S.C.

§ 1985.

## II.   <u>PARTIES</u>

1.   Mr. Spencer is an African-American male who resides at the above captioned address.

2.   At all times material hereto, Mr. Spencer was a customer and business invitee at the Bloomingdale's store in King of Prussia, PA (hereinafter referred to as "Defendant Bloomingdale's").

3.   Defendant Bloomingdale's is a luxury department store owned by Defendant Macy's, Inc. (hereinafter referred to as "Defendant Macy's") with a location at the above captioned address.

4.   Defendant Macy's, Inc. formerly known as "Federated Department Stores, Inc.," is an Ohio corporation with its headquarters in Cincinnati, Ohio and corporate offices in New York, New York. Macy's owns and operates approximately 800 retail stores located throughout the United States, the District of Columbia, Puerto Rico and Guam, including its "flagship" store in Herald Square, Manhattan, New York.

## III.   <u>JURISDICTION and VENUE</u>

5.   Plaintiff incorporates by reference the previous paragraphs as if the same were set forth more fully at length herein.

6.   Jurisdiction is conferred upon this Honorable Court by 28 U.S.C. § 1337 relating to "any civil action or proceeding arising out of any act of Congress regulating commerce," 28 U.S.C. § 1343(4), and 28 U.S.C. § 1331.  This action is authorized and instituted pursuant to under 42 U.S.C. § 1981, 42 U.S.C. § 1982, 42 U.S.C. § 1985.

7.   This Court has personal jurisdiction over Defendants because the company systematically and continuously engages in substantial interstate commercial conduct and business activity in Pennsylvania, and the case arises out of Bloomingdale's unlawful

2

conduct within this Commonwealth.

8.      Venue is appropriately laid in the United States District Court for the Eastern District of Pennsylvania inasmuch as all parties regularly conduct business within this District and the acts complained of by Plaintiff arose herein.

IV.     **FACTUAL ALLEGATIONS**

9.      Plaintiff incorporates by reference the previous paragraphs as if the same were set forth more fully at length herein.

10.     Mr. Spencer, who is a hardworking, successful African-American man, is a frequent customer of the Bloomingdale's King of Prussia, PA store and a Bloomingdale's "Loyalist" since 2013.

11.     On multiple occasions, Mr. Spencer has been subjected to overzealous scrutiny by store security and associates; he has been followed; he has been harassed; and he has been humiliated. On at least eight (8) occasions since November 2016, Bloomingdale's employees have profiled Mr. Spencer, all because he is Black.

12.     On November 5, 2016, Ms. Spencer shopped at Bloomingdale's at two different times.  His first purchase was at the Outpost at 10:26 a.m. for $21.20.  He returned later in the day and made purchases at 3:40 p.m. in Men's Skincare for $21.20; at 3:51 p.m. in Men's Department ($38.00); and at 4:01 p.m. at the Outpost for $21.20.

13.     Mr. Spencer was needlessly followed throughout the Men's Department by a large male dressed in a polo shirt and jeans, who was clearly a member of the loss prevention team.  Mr. Spencer was also closely monitored by the sales associate at the cash register during this time and was never even offered any assistance.

14.     On November 26, 2016, Mr. Spencer was shopping in Gadgets while being closely monitored by an older, heavyset African-American male sales associate.

15.     While shopping, Mr. Spencer heard the telephone at the sales register ring,

3

wherein the sales associate had a brief conversation and hung up. When Mr. Spencer went to make a purchase a few moments later, he was told by the same sales associate that the price as marked $12.99 was not the actual price coming up in the system and that the item was $22. After several minutes of discussion, the sales associate acknowledged the ticketed price and the sale was completed at 10:40 a.m. for $13.77.

16. Mr. Spencer made another purchase at 10:43 a.m. for $11.20. Several minutes later, Mr. Spencer made a purchase for his niece at 11:03 a.m. for $132.60.

17. Throughout this time Mr. Spencer was watched and followed by a tall, White male who had a laser-sharp focus on Mr. Spencer while he shopped. Mr. Spencer took a phone call on his cell and moved closer to the entrance of the store for better cell phone reception at which point another Bloomingdale's employee perched himself right next to the door while Mr. Spencer was on his phone.

18. At 11:44 a.m., Mr. Spencer returned all of the items he previously purchased that day and re-purchased them using a 20% coupon that the previous sales associates refused to discuss or even offer to Mr. Spencer.

19. Following this experience, Mr. Spencer completed an online customer satisfaction survey wherein he described how he felt about the situation; that he was profiled; and that it was not the first time it had happened at the King of Prussia store.

20. Several days later, Mr. Spencer received a call about the survey from a sales associate in the Men's Department who was completely dismissive and unhelpful and made no constructive suggestions on remediating the ongoing violations of Mr. Spencer's civil rights.

21. On December 5, 2016, Mr. Spencer appeared at the store to return some items. While there he also did some shopping. At 6:33 p.m., Mr. Spencer had his first transaction where he returned items totaling $194.31; at 6:35 p.m., Mr. Spencer purchased

4

several items totaling $154.88; and at 6:36 p.m., Mr. Spencer returned an item he purchased online for his niece totaling $63.00.

22. Throughout the duration of this trip, the sales associate who assisted Mr. Spencer just nine days earlier made a point to come down from Women's Shoes just to watch Mr. Spencer during his returns in the Children's Department.

23. The associate, while clearly familiar with Mr. Spencer from their previous interactions, did not say anything or offer any assistance. It was evident that he was there merely to watch Mr. Spencer at the behest of the store's loss prevention team. Simultaneously, another store employee abruptly came onto the floor from the back and closely watched Mr. Spencer for the duration.

24. On December 26, 2016, Mr. Spencer appeared in the store and made several purchases at 7:33 p.m. totaling $262.71 and at 8:00 p.m. for $47.69.

25. While in the fitting room closest to the Polo section of the Men's Department, Mr. Spencer distinctly heard whispering and felt the presence of several people right outside the fitting room door where he was changing. Mr. Spencer was certain that he was followed into the fitting room area by Bloomingdale's employees.

26. On December 28, 2016, Mr. Spencer appeared in the store and made several purchases at 2:35 p.m. for $39.00 and at 2:55 p.m. for $45.93.

27. While shopping in the Men's Department, Mr. Spencer was followed by a younger male with curly hair who was not dressed like a sales associate. This person made a point to stare at Mr. Spencer, pause, and look away after Mr. Spencer noticed him and stared back at him.

28. While on the first floor several minutes later, Mr. Spencer was shopping for a candle while two different Bloomingdale's employees followed and paced behind him.

29. On December 30, 2016, Mr. Spencer attempted to return several items at

5

2:39 p.m. totaling $138.71.  Notwithstanding the fact that the White female customer in front of him was able to return her items without any scrutiny, and despite the fact that he had a receipt and all of the labels intact for his items, Mr. Spencer's returns were overly scrutinized for several minutes while the associate interrogated Mr. Spencer.

30.    On January 10, 2017, while shopping with his sister and his niece, Mr. Spencer was followed and closely watched by the younger male with curly hair who was not dressed like a sales associate (same as December 28, 2016).  This occurred while Mr. Spencer was in the Armani section.  Mr. Spencer made a purchase at 7:31 p.m. for $7.42 that evening.

31.    On January 13, 2017, while shopping in the Men's Department, a Bloomingdale's employee quickly emerged.  He was a tall, bald, African-American male wearing a flannel shirt, baggy jeans and boots, and clearly a member of the loss prevention team. The employee followed Mr. Spencer while he shopped.  The employee was posing as a shopper while carrying two shopping bags.

32.    When Mr. Spencer went to complete his purchase at 8:21 p.m. for $153.99, he spoke with an African-American female sales associate at the register named "Joy."  Mr. Spencer asked Joy if the man following him was "LP" (meaning, loss prevention) and whether he was watching him.  Joy strongly implied that the man following Mr. Spencer was indeed "LP."  She said "its a shame you are being followed, you're always in here buying stuff."  She eventually told Mr. Spencer to complain to management.

33.    Joy made a similar comment to Mr. Spencer about being followed months earlier when he jokingly/sarcastically suggested he was being followed.

34.    Following this experience, Mr. Spencer once again completed an online customer satisfaction survey complaining that he was the victim of ongoing racial profiling at the store.

6

35. On January 17, 2017, Mr. Spencer realized that he would be forced to shop at a different Bloomingdale's location, and out of frustration decided to return $623.95 worth of merchandise to the Willow Grove, PA store.

36. On January 26, 2017 at 9:25 a.m., Mr. Spencer received a telephone call from Cathy Muhlenforth, General Manager of the Bloomingdale's King of Prussia, about ongoing issues Mr. Spencer experienced at the store while being racially profiled.

37. During the call, Muhlenforth advised Mr. Spencer that "Two weeks ago the LP manager was fired" and "There is someone new in place now and you shouldn't feel uncomfortable anymore."

38. Muhlenforth indicated that she would get back to Mr. Spencer to address his concerns, however, to date that has not happened.

39. Based largely on the tone of Muhlenforth's voice and the fact that she agreed with Mr. Spencer throughout the entire conversation, Muhlenforth appeared to Mr. Spencer to seem defeated and/or aware that there was a bigger problem on her hands. Not once did Ms. Muhlenforth dispute or disagree with Mr. Spencer's account.

40. Each time Mr. Spencer mentioned potential ramifications of the poor behavior exhibited by the security staff Muhlenforth said "I know" or "I agree."

41. This was especially true when Mr. Spencer said "if this is happening to me how many other brown or black people have experienced this kind of treatment?"

42. The facts, as described above, clearly demonstrate that Mr. Spencer has been racially profiled on multiple occasions.

43. Lest there be any doubt about the veracity of Mr. Spencer's account, it is quite clear that Bloomingdale's and its parent company, Macy's, Inc., are serial offenders.

44. Macy's has failed to live up to the terms of the 2005 Consent Decree in *People of the State of New York v. Macy's East, Inc.*, 05-CV-00368 (DLC) (S.D.N.Y. 2005) or the

7

2014 Settlement Agreement with the New York State Attorney General's Office.

45.     The company has a pattern and practice of racially segregating and profiling people of color and has not even complied with its own "Customer Bill of Rights" which reads, in pertinent part:

> **Macy's, Inc. prohibits profiling in our stores.**
>
> "Profiling" is defined generally as the practice of judging and addressing       people based on their race, color, religion, sex, sexual orientation, gender       identity,    national    origin, age, disability, ancestry, appearance, or any       personal      or physical characteristics.
>
> **Profiling is an unacceptable practice and will not be tolerated.**
>
> Macy's, Inc. is committed to ensuring that all shoppers, guests, and    employees are treated with respect and dignity and are free from       unreasonable    searches,    profiling,    and discrimination of any kind in our    store.

46.     Defendants continue to treat its shoppers of color as second-class customers, and has done this by enacting and endorsing Company-wide policies and procedures through which Black, Hispanic, Asian and other non-White shoppers are disproportionately followed, stopped, detained, and falsely accused of shoplifting, credit fraud and other acts of larceny as compared to its White customers.

47.     These discriminatory, Company-wide policies and practices have left its customers of color feeling victimized, humiliated, traumatized, and, for many having to defend themselves against baseless criminal charges that have potentially detrimental, long-lasting effects on their livelihoods, ability to obtain gainful employment and reputations.

48.     Defendants have reneged on promises made to bring an end to its discriminatory policies and practices, and have chosen instead to continue to violate the

8

constitutional and civil rights of its customers of color.

49. This is evidenced by the scores of individual lawsuits filed against the Company by Black, Hispanic, Asian and non-White shoppers, both before and after the terms of the Consent Decree technically expired in 2008, accusing the Store of among other things, following, stopping, falsely accusing, detaining and often even bringing baseless criminal charges against innocent shoppers merely because of the color of their skin.

50. It is clear that Defendants have not changed their ways, and have no interest in bringing an end to the unlawful race-based profiling of its customers of color. Rather, it is clear that Defendants are content to simply chalk up having to defend individual lawsuits brought by customers of color whose civil rights have been violated as just another cost of doing business.

51. Defendants engage in a pattern and practice of racially profiling its African-American/Black, Hispanic, Asian and other non-White shoppers as suspected criminals. Specifically, store security personnel commonly and disproportionately target and follow people of color for suspicion of shoplifting, credit card fraud, and other acts of larceny, and disproportionately subject those shoppers to false accusations of unlawful activity, wrongful detentions, unjustified body and property searches, false imprisonment, wrongful confiscation of property and other harassment on the basis of their race, national origin, ethnicity and/or color.

52. Upon information and belief, pursuant to corporate-wide policies and practices, security personnel target people of color for surveillance as soon as they enter the stores, as well as when they enter certain departments within stores. People of color are targeted to be followed by plain-clothes detectives and to be observed by closed circuit TV as they move throughout the stores.

53. Upon information and belief, Defendants' employees are also trained to

9

target people of color for suspected credit card fraud and other acts of larceny, and to then alert security personnel and others to follow these individuals and later detain and accuse them on unlawful conduct.

54.    This conduct is engaged in, authorized, fostered and/or condoned by, among others, Defendants' security directors and security managers.

55.    Defendants' pattern and practice of "racial profiling" or targeting African-American/Black, Hispanic, Asian and other non-White shoppers as shoplifters or as committing fraud or other crimes of deceit and detaining such shoppers on the basis of their race, national origin, ethnicity and/or color violates the civil rights of such shoppers.

56.    Such civil rights violations and other unlawful conduct have occurred with the full knowledge, approval, acquiescence and/or ratification of Defendants.

57.    Among Defendants' common discriminatory practices are:

a.    Subjecting people of color to false accusations of shoplifting, credit card fraud and other acts of larceny in disproportionately high percentages;

b.    Subjecting people of color suspected of shoplifting, committing credit card fraud or other acts of larceny to ridicule, insults, verbal and physical abuse and harassment;

c.    Subjecting people of color suspected of shoplifting, committing credit card fraud or other acts of larceny to unlawful and false detention inside of holding cells location within the stores in disproportionately high percentages;

d.    Subjecting people of color suspected of shoplifting, committing credit card fraud or other acts of larceny to baseless criminal prosecutions in disproportionately high percentages;

e.    Stereotyping shoppers of color as likely criminals, and then targeting and

10

following such persons for no reason but their race; and

f.   Conducting surveillance of shoppers of color disproportionately more than White customers, resulting in people of color being disproportionately followed, stopped, questioned, detained and ultimately falsely charged with crimes they did not commit as compared to the Company's White customers.

58.   The specific, racially motivated abuses giving rise to legal action constitute an on-going pattern and practice that has occurred and is continuing to occur in Company stores throughout the United States.

59.   Further, the Company's corporate-wide policies and practices give security managers, directors and other high-ranking security executives unfettered discretion to decide, among other things, which shoppers will be following and which will be detained as suspected of shoplifting, committing fraud or other acts of larceny.

60.   This discretion to exercise subjective decision-making in deciding whom to follow and apprehend has a disparate discriminatory impact and leads to systematic discrimination against African-American/Black, Hispanic, Asian and other non-White shoppers in violation of their civil rights.

61.   Upon information and belief, in addition to targeting African-American/Black, Hispanic, Asian and non-White shoppers for disproportionate surveillance and detention on suspicion of shoplifting, credit card fraud, or other acts of larceny, the Company's security managers, directors and other high-ranking security executives also criminally prosecute a higher percentage of people of color who have been detained as compared to White/Caucasian suspects.

62.   Upon information and belief, the decision whether a suspect will be criminally

11

prosecuted is not controlled by any objective, race-neutral factors. Rather, the Company's policies and practices establish an entirely subjective decision-making process that permits security managers and directors to systematically discriminate against people of color in, among other things, deciding which larceny suspects will or will not be prosecuted.

63. The discretion to exercise entirely subjective decision--making in deciding whom to prosecute and/or other decisions within the Company's corporate--wide security practices leads to systematic discrimination against African-American/Black, Hispanic, Asian and other non-White shoppers in violation of their civil rights.

## COUNT ONE
## VIOLATION OF 42 U.S.C. § 1981

64. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

65. By the actions described above, among others, Defendants have denied Mr. Spencer, on the basis of his race, national origin, ethnicity and/or color, the same right to make and enforce contracts, including the enjoyment of all benefits, privileges, terms, and conditions of a contractual relationship as is enjoyed by White citizens of the United States, in violation of 42 U.S.C. § 1981.

66. By the actions described above, among others, Defendants have denied Mr. Spencer, on the basis of his race, national origin, ethnicity and/or color the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by White citizens, in violation of 42 U.S.C. § 1981.

67. As a result of Defendants' conduct, Mr. Spencer has suffered and continues to suffer injuries and damages.

12

68. Defendants acted with reckless disregard for Plaintiff's federally protected rights.

69. The above-mentioned acts were willful, wanton, malicious and oppressive and justify the award of punitive damages.

## COUNT TWO
## VIOLATION OF 42 U.S.C. § 1982

70. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

71. By the actions described above, among others, Defendants have denied Plaintiff, on the basis of his race, national origin, ethnicity and/or color, the same right to hold personal property as is enjoyed by White citizens of the United States, in violation of 42 U.S.C. § 1982.

72. As a result of Defendants' conduct, Plaintiff has suffered and continues to suffer injuries and damages.

73. Defendants acted with reckless disregard for Plaintiff's federally protected rights.

74. The above-mentioned acts were willful, wanton, malicious and oppressive and justify the award of punitive damages.

## COUNT THREE
## VIOLATIONS OF 42 U.S.C. § 1985(3)

75. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

76. By the actions described above, among others, Defendants have engaged in a conspiracy to deprive Plaintiff, on the basis of his race, national origin, ethnicity and/or color, of the equal protection of the laws and/or the equal privileges and immunities under the laws, as are enjoyed by White citizens, in violation of 42

13

U.S.C. § 1985(3).

77.    At all times relevant hereto, there has been a corrupt agreement between and among all Defendants and others to deprive African-American/Black, Hispanic, Asian and other non-White persons of the equal protection of the laws and/or the equal privileges and immunities under the laws, including but not limited to the protections, privileges and immunities afforded them under 42 U.S.C. §§ 1981 and 1982.

78.    Defendants intentionally engaged in such actions in furtherance of their conspiracy with a racial and/or class-based, invidiously discriminatory animus.

79.    As a result of Defendants' conspiracy in violation of 42 U.S.C. § 1985(3), Plaintiff has suffered and continue to suffer injuries and damages.

80.    Defendants acted with reckless disregard for Plaintiff's federally protected rights.

81.    The above-mentioned acts were willful, wanton, malicious and oppressive and justify the award of punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that the Court grant him the following relief against Defendants:

a.   Enter a declaratory judgment finding that the actions of Defendants alleged in this Complaint violate 42 U.S.C. §§ 1981, 1982 and 1985(3);

b.   Enter a permanent injunction enjoining Defendants from continuing to engage in the civil rights violations, discrimination and other unlawful conduct alleged in this Complaint;

c.   Enter a permanent injunction directing that Defendants take all affirmative steps necessary to remedy the effects of the civil rights violations, discrimination and other unlawful conduct alleged in this Complaint and to prevent repeated occurrences in the future;

d.   Damages in a sum to exceed $150,000.00 for past and future monetary losses as a result of Defendants' unlawful discrimination;

14

e.  Compensatory damages;

f.  Punitive damages (where applicable);

g.  Emotional pain and suffering;

h.  Reasonable attorneys' fees;

i.  Recoverable Costs;

j.  Pre and post judgment interest;

k.  An allowance to compensate for negative tax consequences; and

l.  Any other relief deemed just and equitable by the Court.


**RESPECTFULLY SUBMITTED**,


August 16, 2017              **By:**  [JC3646 - Validation of Signature Code]
Date                              Jeffrey Campolongo, Esquire
                                  **LAW OFFICE OF JEFFREY CAMPOLONGO**
                                  50 Monument Road
                                  Suite 101
                                  Bala Cynwyd, PA 19004
                                  484-434-8930
                                  484-434-8931 fax
                                  *Counsel for Plaintiff*

15