IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JEROME JUSTIN SPENCER : CIVIL ACTION
:
v. :
:
BLOOMINGDALE'S KING OF PRUSSIA, :
et al. : NO. 17-3775

MEMORANDUM

Bartle, J. December 21, 2017

Plaintiff Jerome Justin Spencer brings this action against defendants Bloomingdale's King of Prussia and Macy's, Inc. for violation of his civil rights under 42 U.S.C. §§ 1981, 1982, and 1985. Before the court is the motion of defendants to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

I

When deciding a Rule 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and draw all inferences in the light most favorable to the plaintiff. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008). We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim must do

more than raise a "mere possibility of misconduct." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679). Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. On a motion under Rule 12(b)(6), the court may consider "allegations contained in the complaint, exhibits attached to the complaint, and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)).

II

The following facts are taken from the complaint and are treated as true for present purposes. Spencer, who is African-American, alleges that he was subjected to racial profiling and discrimination on multiple occasions while shopping at the Bloomingdale's store in King of Prussia, Pennsylvania. In summary, Spencer states that he is a frequent customer of Bloomingdale's and that on at least eight occasions since November 2016 he has been subjected to overzealous scrutiny by Bloomingdale's employees. As a result, he has been harassed and humiliated.

On November 5, 2016, Spencer made several purchases at Bloomingdale's. On that day Spencer was followed throughout the men's department by a member of Bloomingdale's loss prevention

team.  He also was monitored closely by a sales associate at the cash register who watched Spencer but otherwise failed to offer any assistance.

On November 26, 2016, Spencer was again monitored by a Bloomingdale's employee while shopping.  When purchasing an item at the cash register, a sales associate informed Spencer that the price marked on that item was incorrect and that the computer system showed a higher price.  After several minutes of discussion, the sales associate acknowledged the ticketed price and Spencer made his purchase.  Spencer then was followed by two other employees as he made several other purchases throughout the store.  Later that day, Spencer returned to the store all the items he had purchased.  He then re-purchased the same items using a 20% discount coupon that the previous sales associate "refused to discuss or even offer" to him.

Following this experience, Spencer completed a Bloomingdale's online customer satisfaction survey.  In that survey Spencer reported that he had been the victim of racial profiling on several occasions at the King of Prussia store.  Several days later Spencer received a call from a sales associate in response to the survey.  Spencer states that the sales associate was unhelpful and dismissive of Spencer's complaints.

On December 5, 2016, Spencer made another visit to Bloomingdale's.  While there he returned several items and also

made various purchases. A sales associate arrived to watch Spencer return items. Simultaneously another associate came onto the sales floor and observed Spencer for the duration of his time in the store. Thereafter, on December 26, 2016, Spencer made several more purchases at Bloomingdale's. During that shopping trip Spencer was followed into the fitting room area by several employees.

On December 28, 2016 Spencer again made purchases at Bloomingdale's. During this trip Spencer was followed by multiple employees. On December 30, 2016, Spencer made several returns at Bloomingdale's. Although Spencer had a receipt and intact labels for all items, his returns were scrutinized for several minutes and he was questioned by a sales associate. In contrast, a Caucasian customer was able to return items without scrutiny. Spencer was again followed and closely monitored by an employee while at the store on January 10, 2017.

While shopping at Bloomingdale's on January 13, 2017, Spencer was trailed by a loss prevention employee posing as a customer. That day Spencer spoke with an African-American sales associate who confirmed that the man following Spencer was indeed a loss prevention employee. She stated "it's a shame you are being followed, you're always in here buying stuff" and recommended that Spencer complain to management. Following this experience Spencer again completed an online survey to report ongoing racial profiling at the store. Thereafter on January 17, 2017, Spencer decided to

complete several returns at a Bloomingdale's store in Willow Grove, Pennsylvania to avoid the frustration he felt while shopping at the King of Prussia location.

On January 26, 2017, Spencer received a telephone call from the general manager of the King of Prussia store regarding his complaints of racial profiling. The manager advised Spencer that the loss prevention manager had been terminated and that "[t]here is someone new in place now and you shouldn't feel uncomfortable anymore." She further stated "I know" or "I agree" in response to Spencer's complaints of discrimination.

According to the complaint, Macy's is the parent company of Bloomingdale's. Spencer alleges that Macy's was the subject of a 2005 consent decree in the Southern District of New York regarding allegations of racial profiling.[1] Spencer also states that in 2014 Macy's entered into a settlement agreement with the New York State Attorney General's Office regarding similar conduct. He further alleges that both Bloomingdale's and Macy's have a policy or practice whereby non-Caucasian customers are disproportionately followed, stopped, detained, and falsely accused of shoplifting, credit fraud, or other criminal acts.

---

1. Although Spencer alleges that defendant Macy's, Inc. was party to the consent decree, it appears from the case caption of the consent decree as set forth in the complaint that the corporate entity bound by that decree was actually Macy's East, Inc.

III

We first consider whether Spencer has stated a claim in Count I of the complaint against Bloomingdale's for violation of his civil rights under 42 U.S.C. § 1981. Section 1981 provides, among other things, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The statute was first enacted in 1866 and was amended in 1991 to define the right to "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Id. § 1981(b). Section 1981 prohibits racial discrimination in "all phases and incidents of the contractual relationship." Rivers v. Roadway Express, Inc., 511 U.S. 298, 302 (1994). Moreover, courts construe the statute liberally to give effect to the broad remedial purpose it was intended to serve. See, e.g., Brown v. Philip Morris Inc., 250 F.3d 789, 797 (3d Cir. 2001); Mahone v. Waddle, 564 F.2d 1018, 1030 (3d Cir. 1977).

To establish a prima facie case under § 1981, Spencer must allege: (1) that he is a member of a racial minority; (2) that defendant intended to discriminate against him on the basis of race; and (3) that the discrimination abridged his

right to make and enforce a contract.  See Cedeno v. Wal-Mart Stores, Inc., No. 98-479, 1999 WL 1129638, at *2 n.7 (E.D. Pa. Nov. 30, 1999); Ackerman v. Food-4-Less, No. 98-1011, 1998 WL 316084, at *2 (E.D. Pa. June 10, 1998).

Defendant concedes that Spencer has alleged sufficiently the first two elements of his prima facie case, namely that he is a member of a protected class and defendant's intent to discriminate.  However, defendant asserts that Spencer has not alleged that the discrimination abridged his right to make and enforce a contract.  Relying on Gregory v. Dillard's, Inc., 565 F.3d 464, 471-72 (8th Cir. 2009), defendant reasons that while Spencer engaged in numerous sales transactions at Bloomingdale's he does not allege that he was ever refused service or asked to leave, and thus none of his attempts to make or enforce a contract were "thwarted."  Defendant further maintains that discriminatory surveillance by a retailer, without more, is insufficient to establish a claim under § 1981. Gregory, 565 F.3d at 471-72; see also Garrett v. Tandy Corp., 295 F.3d 94, 101 (1st Cir. 2002).

Taking the facts set forth in the complaint in the light most favorable to him, we find that Spencer, an African-American, has sufficiently alleged that defendant interfered with his right to contract, including his right to "the enjoyment of all benefits, privileges, terms, and conditions of

-7-

the contractual relationship" that are enjoyed by white citizens. 42 U.S.C. § 1981(a), (b). Spencer was subjected to numerous instances of discriminatory surveillance. He further alleges that certain employees failed to offer him assistance or provided him assistance inferior to that provided to Caucasian customers. In this respect Spencer's claims are akin to those made in Bethea v. Michael's Family Restaurant and Diner, wherein claims under § 1981 that the African-American plaintiffs received inferior service at a restaurant compared to Caucasian patrons were deemed sufficient to withstand a motion to dismiss. No. 00-6216, 2001 WL 722566, at *3 (E.D. Pa. June 26, 2001). We see no reason to distinguish between the restaurant and retail context when considering such claims.

In addition, Spencer has alleged that on at least one occasion, he was forced to pay a higher price for goods at Bloomingdale's and had to return to the store at a later time to use a coupon that should have been offered to him in the first instance. Spencer asserts that on one occasion he went to a different Bloomingdale's location to avoid the discrimination he faced at the King of Prussia store. These are arguably examples of instances in which Spencer's ability to conduct business with defendant was thwarted or interfered with because of his race.

In considering the motion to dismiss this claim, we are mindful that Spencer has alleged not an isolated incident of

discrimination but rather a pattern or practice of racial profiling. In this regard, his claims are akin to those raised in Hall v. Pennsylvania State Police, 570 F.2d 86 (3d Cir. 1978). There the plaintiff alleged that upon entering a bank his photograph was taken pursuant to a bank policy, enacted on recommendation by the local police department, that the bank photograph black customers who looked "suspicious." 570 F.3d at 88. Our Court of Appeals vacated the district court's order dismissing the § 1981 claim of the plaintiff. In doing so, the Court stated:

> Section 1981 obligates commercial enterprises to extend the same treatment to contractual customers "as is enjoyed by white citizens." Here, plaintiff asserts that upon entering the premises to transact business, his photograph was taken for the police by bank employees pursuant to a racially based surveillance scheme. . . .
>
> This was not the isolated act of an individual employee, but rather the implementation of a policy deliberately adopted by the bank management to offer its services under different terms dependent on race. We hold that an allegation of that nature claiming violation of § 1981 should withstand a 12(b)(6) motion to dismiss.

Id. at 92.

We further note that Spencer was a frequent customer of Bloomingdale's. Therefore his case is distinguishable from situations where the alleged discrimination was an isolated act which occurred after the plaintiff had completed his or her

-9-

shopping, and plaintiff expressed no intention to return to the store. See Ackaa v. Tommy Hilfiger Co., No. 96-8262, 1998 WL 136522, at *6 (E.D. Pa. Mar. 24, 1998); Lewis v. J.C. Penney Co., 948 F. Supp. 367, 371 (D. Del. 1996). Given the broad remedial purpose of § 1981 and the early stage of the litigation, we will allow Spencer's claim to proceed.

Accordingly, the motion to dismiss the § 1981 claim against Bloomingdale's will be denied.

IV

We now turn to Spencer's claim against Bloomingdale's in Count II of the complaint for violation of his civil rights under 42 U.S.C. § 1982. Section 1982 states: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

To state a prima facie case under § 1982, Spencer must allege that: (1) he is a member of a protected class; (2) he was intentionally discriminated against by defendant; and (3) that such discrimination interfered with his property rights. See Shaare Tefila Congregation v. Cobb, 481 U.S. 615, 616 (1987). Due to their similar wording and common lineage, §§ 1981 and 1982 are traditionally construed in pari materia. See CBOCS W., Inc. v. Humphries, 553 U.S. 442, 447 (2008)

(citing Runyon v. McCrary, 427 U.S. 160, 173 (1976)); Cedeno, 1999 WL 1129638, at *2 & n.7.  Defendants have conceded that Spencer alleged sufficiently the first two elements against Bloomingdale's.  For the reasons stated above in connection with his § 1981 claim, we find that Spencer's allegations against this defendant are adequate with respect to interference with his right to purchase personal property.

Accordingly, the motion to dismiss Count II of the complaint against Bloomingdale's will be denied.

V

Finally, Macy's asserts that Spencer has failed to state any claim against it and Bloomingdale's asserts that Spencer has failed to state a claim against it in Count III.  In the complaint Spencer has not alleged that he shopped at Macy's or that Macy's committed any discriminatory act towards him.  Instead, he states that Macy's is the parent company of Bloomingdale's and that Macy's has been the subject of a consent decree and settlement regarding accusations of racial profiling in New York.  Spencer reasons that this decree and settlement support the veracity of his claims against Bloomingdale's and demonstrate that both defendants are "serial offenders."

We find these allegations against Macy's to be insufficient as a matter of law.  Any consent order or settlement entered into by Macy's as to matters or

-11-

investigations pending in New York cannot be used to support the veracity of Spencer's claim that Macy's or Bloomingdale's engaged in racial profiling in this matter. See Fed. R. Evid. 401, 408.

More importantly, Macy's and Bloomingdale's are separate and distinct corporate entities. It is a well-established principle of corporate law that a parent company generally is not liable for the acts of its subsidiary. United States v. Bestfoods, 524 U.S. 51, 61 (1998); see also Jean Anderson Hierarchy of Agents v. Allstate Life Ins. Co., 2 F. Supp. 2d 688, 691 (E.D. Pa. 1998). The court may disregard the corporate form and hold a parent liable for the acts of its subsidiary only by piercing the corporate veil. Pearson v. Component Tech. Corp., 247 F.3d 471, 484 (3d Cir. 2001). Courts have found veil-piercing to be appropriate "when the court must prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime." Id. (quoting Zubik v. Zubik, 384 F.2d 267, 272 (3d Cir. 1967)). Spencer has not alleged sufficient facts to warrant such an extreme action.[2]

---

2. In response to the motion to dismiss, Spencer seeks leave to amend his complaint to set forth additional allegations sufficient to pierce the corporate veil under the theory that Bloomingdale's and Macy's constitute an "integrated enterprise." However, Spencer has failed to formally move to amend and has not attached any draft amended complaint. Thus we need not

In Count III of the complaint, Spencer alleges that Bloomingdale's and Macy's conspired to deprive him of his civil rights on the basis of his race in violation of 42 U.S.C. § 1985(3). That statute prohibits a conspiracy by two or more persons "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3).

As corporate entities in a parent-subsidiary relationship, Bloomingdale's and Macy's are incapable of conspiring to violate Spencer's civil rights.[3] See Eichorn v. AT&T Corp., 248 F.3d 131, 139 (3d Cir. 2001).

Accordingly, the motion of Macy's to dismiss the complaint in its entirety as to it will be granted, and Count III will be dismissed as to Bloomingdale's as well as Macy's.

---

consider Spencer's request. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007).

3. Defendants dispute Spencer's characterization of their corporate relationship. Regardless, we take the facts set forth by Spencer as true for present purposes.